Mr. Justice SWAYNE
 

 delivered the opinion of the court.
 

 This case was brought here by a writ of error to the Supreme Court of the District of Columbia.
 

 On the 4th of September, 1855, a patent was issued to Jonathan Haines for an improvement in mowing machines.
 

 On the 22d of Hovember, 1856, Haines sold and assigned to Ball, Aultman & Co., an exclusive right to the invention and patent, within the limits of the State of Ohio.
 

 On the 13th of April, 1858, upon the surrender of the original patent by Haines, and upon his application, without the assent of Ball, Aultman & Co., a reissue of the patent was granted to him.
 

 On the 15th of January, 1860, Jonathan Haines sold and assigned to his brother, Ansel Haines, one undivided third part of his interest in the patent.
 

 On the 25th of January, 1860, Jonathan and Ansel Haines sold and granted to Isaac and ¥m. C. Hawley the exclusive right to the invention and patent in certain counties in the State of Illinois.
 

 On the 10th of April, 1863, Ansel Haines reassigned to Jonathan Haines all his interest in the patent.
 

 On the 17th of April, 1863, Jonathan Haines sold and assigned all his interest in the patent to Andrew Whiteley, the defendant in error. Haines, at the same time, delivered
 
 *531
 
 the patent to Whiteley, in order that he might surrender it and procure another reissue.
 

 Ball, Aultman & Co. were applied to; hut declined to concur. It does not appear that the Hawleys were advised upon the subject.
 

 On the 25th of January, 1868, Whiteley filed his application for a reissue in the Patent Office, in conformity with the provisions of the thirteenth section of the act of 1836.
 

 The commissioner of patents declined to entertain the application, upon the ground that the applicant was only the grantee of an exclusive sectional interest, and not of the entire patent. He also declined to allow an appeal to he taken from this decision. An application was thereupon made to the Supreme Court of the District of Columbia for a writ of
 
 mandamus.
 
 That court awarded a peremptory writ, commanding the commissioner “ to refer said application to the proper examiner, or otherwise examine or cause the same to he examined according to law.” This writ of error is prosecuted to reverse that order. Did the court err in making it ?
 

 The' thirteenth section of the act of 1836 declares that, under the circumstances therein stated, “ it shall be lawful for the commissioner, upon the surrender to him of such patent,” .... “to cause a new patent to be issued to the said inventor, for the same invention, for the residue of the period then unexpired, for which the original patent was granted, in accordance with the patentee’s corrected description and specifications; and in case of his death or any assignment by him made of the original patent, a similar right shall vest in his executors, administrators, or assigns.”
 

 The seventh section of this act provides that, on the filing of any application for a patent and the payment of the duty required, “the commissioner shall make, or cause to he made, an examination of the alleged new invention or discovery,” &c.
 

 The eighth section of the act of 1837 provides, in regard
 
 *532
 
 to applications for the reissue of patents, and the decisions of the commissioner, that “in all such cases the applicant, if dissatisfied with such decision, shall have the same remedies, and be entitled to the benefit of the same privileges and proceedings as are provided by law in case of original applications for patents.”
 

 This renders it necessary to recur to the act of 1836, and to consider carefully its provisons touching the applications to which it relates.
 

 Both acts should be liberally construed to meet the *wise and beneficent object of the legislature. Patentees are a meritorious class, and all the aid and protection which the law allows, this court will cheerfully give them.
 

 If the commissioner should hold, that a party applying originally for a patent “was not the original and first inventor,” and should decide against him upon that ground, the applicant could undoubtedly take an appeal from his decision. The commissioner having reached this conclusion, would be under no obligation to go further and examine any other question arising in the ease, and it would not be necessary to the right of".appeal that he should do so.
 

 Here an assignee applied for
 
 the reissue
 
 of a patent. It was clearly competent for the commisioner, and it was his duty, to decide whether the applicant was an assignee at all, and, if so, whether he was an assignee with such an interest as entitled him to a reissue within the meaning of the statutory provision upon the subject. The latter question is an important one. It is as yet unsettled, and awaits an authoritative determination.
 

 The commissioner says, in his answer to the rule, that he could not examine the application, because none had been filed in the Patent Office.
 

 This position is untenable. It is averred in the petition, and not denied in the answer — and, therefore, as in other like cases of pleading, to be taken as conceded — that the application was filed with the acting commissioner. It is also admitted, in the answer, that the requisite amount of fees had been paid by the relator, but, it is added, that it
 
 *533
 
 bad not been placed to the credit of the office, and was in the hands of the chief clerk, subject 'to the relator’s order.
 

 The relator had done all in his power to make his application effectual, and had a right to consider it properly before the commissioner.
 

 It was so. If it was not, a
 
 mandamus
 
 would clearly lie to compel the commissioner to receive it. It was his first duty to receive the application, whatever he might do subsequently. Without this initial step there could be no examination, and, indeed, no rightful knowledge of the subject on his part. Examination and the exercise of judgment, with their proper fruit, were to follow, and they did follow.
 

 The commissioner found the question, whether the as-signee was such a one as the law entitled to a reissue, lying at the threshold of his duties? It required an answer before he could proceed further. His decision was against the appellant. His examination of the subject was thorough, and his conclusion is supported by an able and elaborate argument. It was made a part of his reply, to the rule, and is found in the record.
 

 From-this decision, whether right or wrong, the relator had a right, under the statute, to appeal.
 

 If the
 
 mandamus
 
 had ordered the commissioner to allow the appeal, we should have held the order under which it was issued to be correct. But the oi’der was that he should proceed to examiue the application. That he had already done. The preliminary question which he decided was as much within the scope of his authority as any other which could arise. Having resolved it in the negative, there was no necessity for him to look further into the case. Entertaining such views, it would have been idle to do' so.
 
 The question
 
 was vital to the application, and its resolution was fatal, so far as he was concerned. Only a reversal by the tribunal of appeal could revive it, and cast upon him the duty of further examination.
 

 The principles of law relating to the remedy by
 
 mandamus
 
 are well settled.
 

 
 *534
 
 It lies where there is a refusal to perform a ministerial act involving no exercise of judgment or discretion.
 

 It lies, also, where the exercise of judgment and discretion are involved and the officer refuses to decide, provided that, if he decided, the aggrieved party could have his decision reviewed by another tribunal.
 

 It is applicable only in these two classes of cases. It cannot be made to perform the functions of a writ of error.
 

 In
 
 Decatur
 
 v.
 
 Paulding,
 

 *
 

 referring to an act of Congress under which the relator in that case claimed a pension which had been refused her by the Secretary of the Navy, this court said: “If a suit should come before this court which involved the construction of any of these laws, the court certainly would not "be bound to adopt the construction given by any head of a department; and if they supposed his decision to be wrong, they would of course so pronounce their judgment. But their. construction of a law must be given in a case in which they have jurisdiction, and in which it is their duty to interpret the act of Congress in order to ascertain the rights of the parties in the cause before them. The court could not entertain an appeal from the decision of one of the secretaries, nor reverse his judgment in any case where the law authorizes him to exercise discretion or judgment; nor can it by
 
 mandamus
 
 act directly upon the officer, and guide or control his judgment or discretion in the matters -committed to his care in the ordinary discharge of his official duties. . . . The interference of courts with the performance of the ordinary duties of the executive department of the government would be productive of nothing but mischief, and we are quite satisfied that such a power was never intended to be given to them.”
 

 This case, as presented to the court below, was within neither of the categories above mentioned. The court, therefore, erred in making the order to which the commissioner objected.
 

 The main question passed upon by the commissioner, and
 
 *535
 
 which was supposed to underlie this case,-is not before us for consideration. If it were, as at present advised, we are not prepared to say that the decision of the commissioner was not correct.
 

 The order of the court below, awarding the mandamus, is reversed with costs, and it is ordered by this court that the application of the relator he by that court
 

 OVERRULED AWD DISMISSED.
 

 *
 

 14 Peters, 515.