UNITED STATES OF AMERICA, EX REL. WEDDERBURN

*v.*

BLISS.

STATUTORY CONSTRUCTION; PATENT ATTORNEYS, DISBARMENT OF; MANDAMUS.

1. The construction placed by an executive department of the Government upon a statute enacted for its guidance and the regulation of its business, must, unless it be plainly erroneous, receive due weight and consideration by the courts, and should not be disregarded, except for cogent reasons.
2. Sec. 487 R. S. U. S., providing that for gross misconduct the Commissioner of Patents may refuse to recognize any person as a patent agent, but the reasons for such refusal shall be subject to the approval of the Secretary of the Interior; and section 5 of the act of Congress of July 4, 1884 (23 Stat. 98), providing that the Secretary may, after notice and opportunity for hearing, disbar any agent or attorney practicing before his Department, for misconduct, are to be construed together as being *in pari materia.*
3. Where a patent attorney charged with misconduct as a practitioner before the Patent Office, upon a rule to show cause why he should not be disbarred, has had a hearing before the Commissioner of Patents, with opportunity, which he has availed himself of, to cross-examine witnesses produced in support of the charges against him, and to adduce testimony and present arguments in his own behalf, it is not an essential part of that hearing, or of due process of law in the premises, that he should be permitted to present arguments, either oral or writ-

ten, before the Secretary of the Interior in person, when the
report of the Commissioner in the case has been submitted to
the Secretary for his approval or disapproval; and a writ of
mandamus will not lie to compel the Secretary to hear such
arguments before approving or disapproving the Commission-
er's report.

4. Quære, whether, in such a case, after the Secretary of the Interior
has acted upon the report of the Commissioner of Patents, and
has refused to reopen the matter and allow the attorney to be
heard, his refusal so to do is to be regarded as a jurisdictional
matter for which the writ of mandamus would be proper, espec-
ially where it is not shown or indicated wherein the Secre-
tary erred or was mistaken or misled.

No. 758. Submitted March 11, 1898. Decided April 4, 1898.

HEARING on an appeal by the relator from a judgment
dismissing a petition for a writ of mandamus. Affirmed.

The COURT, in its opinion, stated the case as follows:

This is an application by the appellant here, John Wed-
derburn, as relator, for a writ of mandamus to require the
Secretary of the Interior to give him a hearing in respect
of certain proceedings instituted against him for his exclu-
sion from practice before that Department.

It appears from the record that prior to June 14, 1897,
the relator was in the enjoyment of a large and apparently
lucrative practice as an agent or attorney for the prosecu-
tion of claims for patents before the Patent Office Bureau of
the Department of the Interior, duly recognized and admit-
ted to practice under the rules of that department, and that
on the day mentioned he was served with a notice from the
Commissioner of Patents to show cause, if any he had, why
he should not be refused further recognition as such agent
or attorney. With the notice charges were served upon
him tending to show malpractice on his part, and with the
charges were incorporated copies of documents and state-
ments upon which the charges were founded. The relator
in due time made answer to the charges, the substantial
purport of which was a denial of their truth. Thereupon
an extended and elaborate investigation was had before the

Commissioner and Asssistant Commissioner of Patents, and a large amount of testimony, both for and against the relator, was taken and reduced to writing, and it seems that a complete record was kept of all the proceedings.

Finally the matter came to a hearing before the Commissioner and Assistant Commissioner. Oral argument was had on both sides before these officers, and written or printed briefs also were invited to be filed. There was a printed brief filed against the relator, but none on his behalf. Thereupon the Assistant Commissioner, at the request of the Commissioner, prepared a synopsis of the testimony and a report of his findings thereon and submitted it to the Commissioner. The Commissioner then, in a long and elaborate opinion in writing, reviewed the whole case, and came to the conclusion that the relator had been guilty of malpractice, and that he should be excluded from further recognition before the Department. This conclusion, together with his reasons therefor, he reported to the Secretary of the Interior, and the papers were all transmitted to the latter officer for his final action in the case.

As to the regularity of the proceedings thus far there is no complaint whatever by the relator, and it would seem, in view of the abundant opportunity for a hearing that had been afforded to him, that there was no ground for complaint. But he claims that when the Commissioner's conclusions were reported to the Secretary of the Interior, he should have had notice of them, and an opportunity for hearing before the Secretary, which, under the circumstances, would mean not an opportunity for the introduction of further testimony, which is not claimed, but an opportunity for argument, either oral or written, before the Secretary in person. This he did not have. He had no notice of the Commissioner's conclusions until after their approval by the Secretary, and he had no opportunity for argument before the Secretary, and this is the burden of his grievance, for which he now seeks the interposition of the courts.

The Secretary of the Interior seems to have examined with great care the decision of the Commissioner of Patents and the report of the proceedings made by the Assistant Commissioner, and he gave them his full approval. Thereupon the Commissioner of Patents issued an order excluding the relator from recognition as an agent or attorney.

The relator then addressed a communication to the Secretary of the Interior, in which he requested him to vacate the order of approval of the Commissioner's report and recommendation, and to give the relator an opportunity for a hearing upon the matter before himself. This application was refused, and thereupon the present proceedings were instituted by the filing in the Supreme Court of the District of Columbia of a petition for a writ of *mandamus* to the Secretary to require the latter to give to the petitioner the opportunity for a hearing before that officer, to which he claimed to be entitled. With the petition were filed exhibits of all the proceedings had in the department; and these were deemed so full and so fairly set forth that, on behalf of the Secretary of the Interior, as the respondent in the case, it was thought sufficient to file a demurrer in order to bring before the court all the questions of law involved. The Supreme Court of the District of Columbia sustained the demurrer, refused the writ, and dismissed the petition, and from the order of dismissal the present appeal has been prosecuted.

*Mr. J. M. Wilson* and *Messrs. R. Ross Perry & Son* for the appellant:

The question for decision is, can the Secretary of the Interior approve an order of the Commissioner of Patents forbidding an agent or an attorney from practicing before the Patent Office without giving such agent or attorney an opportunity to be heard by himself and not merely by the Commissioner? And if he can not, then what constitutes such a hearing before him as to be due process of law?

1. The Secretary of the Interior has held that under authority of section 487 R. S., and the act of Congress of July 4, 1884, he had the power to approve the order of the Commissioner of Patents without allowing the relator a further hearing. If he exceeded his powers in not permitting a hearing, a writ of *mandamus* is the proper remedy to control his action. *Butterworth* v. *Hoe*, 112 U. S. 50; *Noble* v. *Logging Co.*, 147 U. S. 165; *Board of Liquidation* v. *McComb*, 92 U. S. 531, 541; *Dunlap* v. *Black*, 128 U. S. 40.

The writ of *mandamus* is the appropriate remedy in a case where a court in disbarring an attorney has exceeded its jurisdiction. *Ex parte Wall*, 107 U. S. 265; *Ex parte Bradley*, 7 Wall. 364; *Ex parte Robinson*, 19 Wall. 505.

2. The relator had a right to practice before all the bureaus of the Department of the Interior until removed by the proper officer of such Department—proceeding in a legal manner. The position of an attorney at law and his right to practice before the court is forcibly set forth in *Ex parte Garland*, 4 Wall. 378, and *Ex parte Wall*, 107 U. S. 265. The interest and right of the relator to his position of patent attorney or agent is of such a character as to bring him within the protection of Article V of the Amendments to the Constitution of the United States, providing that "no person shall be  .  .  .  deprived of life, liberty, or property, without due process of law." Robinson on Patents, Sec. 437.

Since, under both section 487 R. S., and the act of July 4, 1884, the power is given exclusively to the Secretary to decide whether an attorney may be excluded from practice, a *quasi*-judicial duty is imposed on him which he can not delegate, and if he can not delegate the duty how can he delegate that upon which the decision must rest?

The Secretary, in his letter addressed to the Commissioner, says he has gone over the decision and report with much care. But he went over it without giving the relator

an opportunity to appear and meet the charges against him. It was not for him to say in advance that nothing the relator could say would change his mind. It is the duty of a judge and an essential of "due process of law" to hear first and condemn afterwards. *Regina* v. *Smith*, 5 Q. B. 614. This case of course is not subject to our constitutional provision in regard to "due process of law," but is declaratory of the inherent principles of right existing in the common law, which are sought to be preserved by the above-mentioned provision of the Constitution. See, also, *Railroad* v. *Hughes*, 3 A. & E. 425; *Painter* v. *Gas Co.*, 3 A. & E. 433; *Ham* v. *Police Board*, 142 Mass. 90; *Craig* v. *Kilne*, 65 Pa. St. 399; *Fox's Appeal*, 112 Pa. St. 337.

3. The Supreme Court has in numerous cases considered what amounted to "due process of law." *Davidson* v. *New Orleans*, 96 U. S. 101; *Murray's Lessee* v. *Land Co.*, 18 How. 272; *Ex parte Wall*, 107 U. S. 289. See, also, *Stuart* v. *Palmer*, 74 N. Y. 191. As to the right of relator to notice and an opportunity to be heard, see, *Hagar* v. *Rec. Dist.*, 111 U. S. 708; *McMillen* v. *Anderson*, 95 U. S. 37; *Pearson* v. *Yendall*, 95 U. S. 294.

*Mr. W. A. Megrath* for the appellee:

1. Section 487 R. S. is a substitute for section 8 of the act of 1861, which provided for the approval of the President of the United States of the reasons of the Commissioner of Patents for refusing for gross misconduct to recognize a patent agent. Neither one of these sections provides for any hearing before the approving officer. When the report and reasons of the Commissioner of Patents for disbarring the relator were presented to the Secretary of the Interior, he acted upon the report and was satisfied with it. He accepted it and gave his executive sanction to it. This is all that he is required to do under the statute. See *Thaw* v. *Ritchie*, 5 Mackey, 201, 225.

The practice under this statute has never been any differ-

ent. The Department has never construed the statute as imposing upon the Secretary of the Interior the duty of granting an oral hearing to an agent against whom charges had been filed before acting on the recommendation of the Commissioner of Patents. Neither was it the practice for the President to give oral hearings when the approving power was vested in him under the act of 1861. This long uninterrupted practice under the statute is good evidence of its proper construction. *McKeen* v. *Delancy*, 5 Cranch, 22. Even if the statute were not clear, the contemporaneous and uniform executive construction is decisive. *Brown* v. *U. S.*, 113 U. S. 568; *The Laura*, 114 U. S. 411; *St. Paul, M. & R. R. Co.* v. *Phelps*, 137 U. S. 528; *Merritt* v. *Cameron*, 137 U. S. 542; *Schell's Exrs.* v. *Fauche*, 138 U. S. 562.

2. The act of July 4, 1884, does not impose upon the Secretary of the Interior the duty of giving an oral hearing to a patent agent before acting upon the recommendations of the Commissioner of Patents looking to disbarring the agent. It is a general rule of law that a public officer may act through the heads of the departments or bureaus under him; and an act so performed has the same force and effect as if done by him personally. *Wilcox* v. *Jackson*, 13 Pet. 498; *Confiscation Cases*, 20 Wall. 92; *United States* v. *Jackson*, 16 Pet. 291; *Wolsey* v. *Chapman*, 101 U. S. 755.

Furthermore, by section 5 of the act of July 4, 1884, the Secretary of the Interior is clothed with authority to prescribe rules and regulations governing the recognition of agents, etc., representing claimants before this Department. Rule 9, which the Secretary promulgated under authority of the act of July 4, 1884, in specific terms makes the head of the bureau the officer to investigate charges against agents and to hear the agents in the premises. The Secretary's duty is to consider the statement of facts and such recommendations as to disbarment from practice as the head of the bureau may deem proper to forward, together with all the papers, to the Secretary after the investigation shall

have been concluded by the head of the bureau. And this rule was literally followed in this case.

3. What constitutes due process of law has been considered by the Supreme Court in several cases, but in no case have they made a definition applicable to all cases. *Davidson* v. *New Orleans*, 96 U. S. 97, 101; *Ex parte Wall*, 107 U. S. 265; *Hustado* v. *California*, 110 U. S. 516; *Hagar* v. *Rec. Dist.*, 111 U. S. 701. From what can be gathered from these authorities, the proceedings by which the relator was disbarred were due process of law. The proceedings were suitable and proper to the nature of the case, and were such proceedings as were authorized by the established customs, usuages, and rules of the Department. These proceedings can not be said to have deprived the relator of a hearing, and such a hearing as was suitable in the premises.

It has been held that in disbarring an attorney the proceedings do not have to be conducted according to " due process of law;" that even where no rule, complaint, or attachment was issued and no summons or other process was presented or served on him to bring the attorney before the court, he had been properly disbarred. *In re Randall*, 11 Allen, 473, 478; *Randall* v. *Brigham*, 7 Wall. 523.

Mr. Justice MORRIS delivered the opinion of the Court:

The question in the case is, whether the appellant had in the Department of the Interior the hearing upon his case to which he was by law entitled. For, as to the character of the judgment to be rendered upon such hearing, there is, of course, no pretence that it can be controlled or directed in any manner by the courts of law, or that it is subject to review by any other tribunal for any supposed error. The final determination upon such hearing is for the Secretary of the Interior, and not a matter for the consideration of the courts.

That the relator's office of agent and attorney before the Patent Office and the Department of the Interior was a

valuable right of which he should not be deprived without due process of law, such as would be applicable to his case, is not controverted. Nor is there controversy as to what, in general, would constitute due process of law in such cases as that to which the relator was summoned to respond. Specific charges, due notice of such charges, an opportunity to make specific answer to them, an opportunity to cross-examine the witnesses in support of them, an opportunity to adduce testimony in contradiction of them, an opportunity for argument upon the testimony and upon the law and the facts,—and all this before the proper tribunal, competent to render judgment, and which does, in fact, render judgment—this undoubtedly constitutes due process of law under ordinary circumstances to its fullest extent, and all this was had in the present instance, if it was competent for the Secretary of the Interior and the Commissioner of Patents to give the hearing in the mode in which it was actually given. Upon the claim of the appellant himself, no proper element of due process of law was wanting in the case except the opportunity of submitting an argument, oral or written, to the Secretary of the Interior in person, after such opportunity had been fully availed of before the Commissioner of Patents. But the right to submit argument is a valuable, although perhaps not always an essential, part of the hearing that constitutes due process of law. Whether the appellant was entitled to it in this case, and to the extent of his claim, depends upon the provisions of the statute law that has been enacted upon this subject.

Section 487 of the Revised Statutes of the United States, which substantially embodies the seventeenth section of the act of Congress of July 8, 1870, consolidating the patent and copyright laws, is to the following effect:

"For gross misconduct the Commissioner of Patents may refuse to recognize any person as a patent agent, either generally or in any particular case; but the reasons for such

refusal shall be duly recorded, and be subject to the approval of the Secretary of the Interior."

There had been a previous act of March 2, 1861 (12 Stat. 246), which in its eighth section contained precisely the same provision, with the exception that the approval of the Commissioner's action was to be by the President of the United States instead of the Secretary of the Interior; but it is not apparent that the change has any significance in connection with the present controversy.

Subsequently by an act of Congress of July 4, 1884 (23 Stat. 98), which had reference mainly to pensions, but which purported also to be "for other purposes," it was provided as follows:

"Section 5. That the Secretary of the Interior may prescribe rules and regulations governing the recognition of agents, attorneys, or other persons representing claimants before his Department, and may require of such persons, agents, and attorneys, before being recognized as representatives of claimants, that they shall show that they are of good moral character and in good repute, possessed of the necessary qualifications to enable them to render such claimants valuable service, and otherwise competent to advise and assist such claimants in the presentation of their claims; and such Secretary may, after notice and opportunity for hearing, suspend or exclude from further practice before his Department any such person, agent, or attorney shown to be incompetent, disreputable, or who refuses to comply with the said rules and regulations, or who shall, with intent to defraud, in any manner deceive, mislead, or threaten any claimant, or prospective claimant, by word, circular, letter, or by advertisement."

It seems to be conceded that this provision of law, although contained, as stated, in an act mainly relating to pensions, constituting in itself an independent section of the act, is sufficiently general to apply to all the bureaus of the Department of the Interior, and not alone to practitioners

before the Pension Bureau. And it seems also to be conceded that it does not repeal the section 487 of the Revised Statutes which has been quoted, but that it is to be taken in connection with it as being *in pari materia*, and that both acts are to be construed together.

In pursuance apparently of the power vested in him by this act of July 4, 1884, the Secretary of the Interior, among other rules, promulgated the following, under which it is understood the investigation of the charges against the relator was conducted:

"Rule 9. Whenever an attorney or agent is charged with improper practice in connection with any matter before a bureau of this Department, the head of such bureau shall investigate the charge, giving the attorney or agent due notice, together with a statement of the charge against him, and allow him an opportunity to be heard in the premises. When the investigation shall have been concluded, all the papers shall be forwarded to the Department, with a statement of the facts and such recommendations as to disbarment from practice as the head of the bureau shall deem proper, for the consideration of the Secretary of the Interior. During the investigation the attorney or agent will be recognized as such, unless for special reasons the Secretary shall order his suspension from practice."

The question recurs, did the appellant have the hearing to which he was entitled under these enactments?

If the determination of this inquiry depended exclusively upon the construction to be given to section 487 of the Revised Statutes, it seems to us that there would be no serious difficulty in reaching a conclusion. It is very clear that this section remits to the Commissioner of Patents the entire cognizance of cases of malpractice occurring before his bureau, and that under it the hearing of such cases is to be by him and not by the Secretary of the Interior. It is eminently fitting that this should be so, in view of the character of the duties, judicial or *quasi*-judicial, which are

vested in him. *Butterworth* v. *Hoe*, 112 U. S. 50. It is true, however, that by this section there is reserved to the Secretary of the Interior a supervising power over the action of the Commissioner of Patents; but this is no more than an executive or administrative proceeding. The provision that the judgment of the Commissioner shall "be subject to the approval of the Secretary of the Interior," does not make the Secretary a court for the trial of the case, nor does it make him in any proper sense an appellate tribunal before which it would be proper for a party in interest to demand and to be accorded a hearing. Such terms are nowhere in our legislation used for the creation of apppellate judicial authority. They are most inapt terms for any such purpose, and they are equally inapt to constitute the Secretary the court of first instance, for which the findings of the Commissioner may serve as the findings of a referee or master in chancery. In the one case in our legislation in which similar or equivalent terms are used for the creation of supervisory *quasi*-judicial authority—the provision for the review of sentences of courts-martial by the President of the United States or by a commanding officer—it has never been heard of that such supervisory authority implies any right on the part of a person in interest to a hearing *de novo* before such supervising power, notwithstanding that the exercise of the power is a *quasi*-judicial function.

It is very clear to us that under this section 487 of the Revised Statutes, if it stood alone, the Commissioner of Patents, and not the Secretary of the Interior, constitutes the tribunal for the determination of cases of alleged malpractice occurring before his bureau, and that the hearing, to which an agent or attorney is entitled before exclusion from recognition, is to be had before the Commissioner. The authority of the Secretary is to review the record transmitted to him, and to give or refuse his assent to the Commissioner's recommendations, as he may think proper, and for any reason satisfactory to him. In other words, it is for

the Commissioner to pass judgment; but that judgment is not to be given effect until it is approved by the Secretary.

What change, if any, does the act of 1884 make in the proceeding? That act undoubtedly sought to place all the bureaus of the Department of the Interior on the same basis in the matter of the recognition of agents and attorneys, and in the matter of their exclusion from practice for misconduct, while section 487 of the Revised Statutes had reference only to the Patent Office. It provides for rules and regulations to be made by the Secretary to regulate the matter of recognition; but it does not in terms provide for any such rules and regulations in regard to the matter of disbarment. The act would seem to have been left intentionally vague in this regard; for, instead of providing that the Secretary might make rules to govern the matter of the exclusion of attorneys, as well as that of their admission, it provides that, "after notice and an opportunity for a hearing," the Secretary might exclude such attorneys from practice. It leaves it undetermined how and before whom such hearing shall be had; and undoubtedly there is great plausibility in the theory that the hearing is to be before the person who is authorized to take final action upon it. If we were dealing here with the action of judicial tribunals, we would have no hesitation whatever in so holding. A court authorized to decide necessarily is the court authorized to hear, and it may not delegate to any one its duty to hear any more than it can delegate its function to decide.

But there is question here of the conduct of the affairs of a great executive Department of the Government, and the character of its duties is not to be ignored in the construction of an act of Congress intended merely to regulate the performance of those duties to the best advantage of the people and with entire justice to all concerned. It is well-settled law, and a fundamental rule of our governmental system, that purely judicial functions can not be conferred upon an executive officer. But of necessity executive

officers are frequently vested with discretionary functions of a *quasi*-judicial character, and these can no more be delegated than can strictly judicial authority. *Runkle* v. *United States*, 122 U. S. 543. But where it does not distinctly appear what officer is to exercise the *quasi*-judicial authority conferred by statute, and where the tenor of legislation leaves the exercise of it to be determined in great measure by executive regulation, the presumption does not necessarily arise that the head of the Department must himself in person exercise the authority so conferred. When we compare the act of Congress of 1884 and the section 487 of the Revised Statutes, and construe them together, as it is justly claimed on behalf of the appellant that we should construe them, it is clear that it was not the intention of Congress to repeal section 487 by the enactment of the later law; and if such was not the intention of Congress, then the only reasonable construction of the act of 1884 was that the hearing therein provided to be given to the persons charged with malpractice was the hearing implied to be given by section 487 of the Revised Statutes, So far, at least, as the Patent Office was concerned, the act of 1884 made no substantial change in the law. It simply provided expressly for the notice and hearing, the right to which had been implied in the previous statute. And that this was the understanding also of the Department of the Interior is clear from Rule 9, which has been cited, for that rule is in entire accordance with section 487 of the Revised Statutes, and serves as a construction of the meaning of the act of 1884 as it was understood by the Department.

Now, it has been repeatedly held by the Supreme Court of the United States, and it must, therefore, be regarded as settled law, that the construction placed by an executive Department of the Government upon a statute enacted for its guidance and the regulation of its business must, unless it be plainly erroneous, receive due weight and consideration, and should not be disregarded, except for cogent rea-

sons. *United States* v. *Johnston,* 124 U. S. 236; *Heath* v. *Wallace,* 138 U. S. 573; *United States* v. *Railroad Co.,* 142 U. S. 615; *Pennoyer* v. *McConnaughy,* 140 U. S. 1; *United States* v. *Railroad Co.,* 148 U. S. 562; *Robertson* v. *Downing,* 127 U. S. 607. When, therefore, the department which was called upon to administer the act of 1884 and to construe that act in connection with section 487 of the Revised Statutes, did, by the adoption of its Rule 9, so construe it that the notice and an opportunity for a hearing therein provided to be given should be given by the head of the proper bureau, and that the investigation should be conducted by such bureau officer, subject to the approval of his findings by the Secretary of the Interior, it is not apparent that there was error in that construction, and we find no reason to antagonize it. Indeed, so far as the intention of Congress in the premises can be inferred from the statute itself, it would seem that this was the only proper construction. For it will be noticed that the provision of the statute is not that the Secretary might exclude from practice after notice and hearing of the party charged, which would be the more natural form of expression if it was the intention that the hearing should be before the Secretary in person, but that he might exclude "*after notice and opportunity for a hearing,*"—meaning plainly a hearing before some proper officer in such reasonable mode as should be provided by regulation of the department.

What Mr. Justice Field, speaking for the Supreme Court of the United States in the case of *Randall* v. *Brigham,* 7 Wall. 523, said in reference to the general rule of law on this subject, would seem to be appropriate here. He said:

"All that is requisite for their validity (meaning the validity of proceedings for disbarment of an attorney) is, that, when not taken for matters occurring in open court, in the presence of the judges, notice should be given to the attorney of the charges made and opportunity afforded him for explanation and defence. *The manner in which the proceed-*

*ings shall be conducted, so that it be without oppression or un-
fairness, is a matter of judicial regulation."*

We must conclude that the hearing contemplated by the
act of 1884 was accorded to this appellant in this instance
in the hearing which he had before the Commissioner of
Patents, and that the purpose of the statute was amply sub-
served by that hearing. We can not hold that the relator
was entitled to two hearings—one before the Commissioner
and one before the Secretary. He himself does not claim
this, at least in the fullest sense of the term "hearing." He
does not claim that he had the right to adduce testimony
and to go over the case *de novo* before the Secretary; and
yet to this he was entitled if his construction of the statute
be correct, for the word *"hearing"* in law and in this statute
means something more than oral argument. It means,
also, the right to adduce testimony. Now, if the sole hear-
ing contemplated by the statute was to be had before the
Secretary, the Commissioner of Patents could not hear it at
all, and the only duty that could reasonably be imposed
upon that officer was that of taking the testimony and re-
porting it to the Secretary. But this conclusion would be
in direct contravention of the section 487 of the Revised
Statutes, which explicitly provides that the Commissioner
shall determine the matter, subject only to approval of his
action by the Secretary of the Interior. The Commissioner
does not act in the matter as a master in chancery or other
officer whose duty it is simply to facilitate proceedings and
to put them in shape for action thereon by the tribunal
authorized to decide them. The Commissioner himself is
the tribunal in this case. He is the person authorized by
law to investigate and decide. He is therefore the person
before whom a hearing can most properly and ought to be
had before he formulates his conclusions.

The utmost that could be claimed in this connection is,
that the Secretary of the Interior acts as a kind of appel-
late tribunal over the Commissioner of Patents. But even

if this be conceded—and we think that it must be taken with some qualification—it does not follow that a party in interest is entitled to oral argument, or to a *hearing* of any kind, before him beyond what is involved in the examination of the record necessary for the exercise of supervisory power. Such argument might be allowed as matter of grace, but it can not legally be claimed as matter of right. Even in proceedings purely judicial, the right of appeal is not matter of absolute right, but is of statutory creation, and therefore may be regulated or limited by statute, or by rules of court made in pursuance of statute, and may even be taken away entirely. And if it may be so limited and regulated, it is competent to exclude argument of any kind, except such as may have appeared in the court of original resort.

But, as we have already intimated, the words of the statute are not those that are usual in the creation of appellate tribunals. It is true that the supervisory power vested in the Secretary of the Interior over the action of the Commissioner is in this instance judicial in its nature, and must be exercised by the Secretary, himself, in person (*Runkle* v. *United States*, 122 U. S. 543), but all usage and all precedent would be vain if we were to hold that he could not exercise it until he heard the party in interest in oral argument. The meaning of such supervisory power is not that the Secretary must try or hear the cause, but that the judgment of the Commissioner is not to be carried into effect until it receives the approval of the Secretary; and in order to give it this approval, or conversely and by implication his disapproval, the Secretary is necessitated to go over the record of the proceedings that is made up for him according to law or regulation. This, as we have said, is a judicial or *quasi*-judicial duty on his part; but it is not the equivalent in any sense of the hearing of a cause.

Entertaining the view of the case which we have here sought to express, it is unnecessary for us to determine

whether, under the decision in the case of *Commissioner* v. *Whiteley*, 4 Wall. 522, it would be proper in any event to issue the writ of *mandamus* in this case.    In the case of *Commissioner* v. *Whiteley*, the rule was laid down quite emphatically by the Supreme Court of the United States, through Mr. Justice Swayne, that the writ of *mandamus* is only applicable in two classes of cases: first, where there is a refusal to perform a ministerial act involving no exercise of judgment or discretion; second, where the exercise of judgment and discretion are involved and the officer refuses to decide, "*provided that, if he decided, the aggrieved party could have his decision reviewed by another tribunal.*"    Unless this decision has been modified by subsequent adjudications by the same tribunal, it would seem to be decisive of this case, for there is certainly no right of review by any tribunal of the decision of the Secretary of the Interior in the premises. It would seem, however, that the decision in the case of *Commissioner* v. *Whiteley* has been somewhat modified in subsequent cases.    Certainly an exception was made to it in the case of *Ex parte Bradley*, 7 Wall. 364, in which it was broadly held, without reference to the theory of appellate jurisdiction to review the judgment that might be rendered by an inferior court, the action of such court might be restrained or constrained by the writ of *mandamus*, whenever it undertook to proceed without jurisdiction, or the case was one of irregularity, against law, or of flagrant injustice. But it may be questioned whether these very general expressions have not themselves been modified by subsequent decisions.

. Assuming, however, for our present purpose that *mandamus* is proper whenever an inferior court, or a judicial officer charged with the exercise of discretionary or judicial functions, either assumes to exercise jurisdiction when none exists, or refuses to entertain jurisdiction with which he is by law invested, without regard to the question whether there is any appeal from his judgment when rendered and

when he has acted, we may well doubt whether the present case is one proper for the writ. The purpose here sought is to compel the exercise of jurisdiction substantially denied to exist—the alleged right to a hearing or oral argument before the Secretary in person. But the only possible result of a hearing is ultimate action in the matter by the Secretary in the way of approval or disapproval of the conclusion reached by the Commissioner. Now, that action has been had. The Secretary has given his approval to the Commissioner's recommendations, and upon application of the relator for the rescission of his action and for an opportunity to be heard before him, he has reiterated his determination and refused to reopen the case. We greatly doubt whether, under such circumstances, the refusal of the Secretary to accord to the relator the opportunity to make an argument, especially when it is not shown or in any manner intimated how or wherein the Secretary erred or was mistaken or misled, is to be regarded as a jurisdictional matter for which the writ of *mandamus* would be proper.

But this question it is unnecessary here to decide. We prefer to base our decision on the broader ground that the relator has had the hearing to which he was by law entitled, and that it was not an essential part of that hearing, or of due process of law in the premises, that he should have been permitted to make an argument, either oral or written, before the Secretary of the Interior in person. But we do this all the more readily in the hope and expectation that our decision may be reviewed by the court of last resort, and that our error, if error there be, may be there corrected.

We are of opinion that the order of the Supreme Court of the District of Columbia refusing the writ of *mandamus* in this case was right, and that it should be *affirmed, with costs; and it is so ordered.*