### DUNHAM, *City Clerk,* v. ARDERY.

No. 6089. Opinion Filed September 15, 1914.

Rehearing Denied October 13, 1914.

(143 Pac. 331.)

1. MUNICIPAL CORPORATIONS—City Charter—Validity. Section 1 of article 8 of the charter of the city of Guthrie is not in conflict with sections 1, 2, and 6 of article 8 of the Constitution, nor with section 2, art. 25 (Schedule) of the Constitution.

2. SAME—Recall of Municipal Officers—Duties of City Clerk—Nature. Section 1 of article 8 of the charter of the city of Guthrie provides in part as follows: ''The holder of any elective office may be removed at any time by the electors qualified to vote for a successor to such incumbent  *  *  *  The procedure to effect the removal shall be by petition, signed by electors entitled to vote for a successor to the incumbent. The signatures to the petition need not be appended to one paper, but each signer shall add to his signature his place of residence, giving the street and number.  *  *  *  Within ten days from the date of filing such petition, the city clerk shall examine, and from the voters' register ascertain whether or not said petition is signed by the requisite number of qualified voters,  *  *  *  and he shall attach to said petition his certificate, show-

ing the result of such examination. If, by the clerk's certificate, the petition is shown to be insufficient, it may be amended within ten days from the date of said certificate. The clerk shall, within ten days after such amendment, make a like examination of the amended petition, and if his certificate shall show the same to be insufficient, it shall be returned to the person filing the same, without prejudice, however, to the filing of a new petition to the same effect.'' **Held,** that the duties required to be performed by the clerk are quasi judicial and vest in him the exercise of discretion and judgment.

3. **MANDAMUS—Grounds—Performance of Official Duties.** Where the duties devolving upon a ministerial officer require the exercise of discretion and judgment, and such officer has acted, although erroneously, a writ of mandamus may not lawfully issue to review, reverse, or correct the erroneous decision of such officer, nor to control his decision, even though there may be no other method of review or correction provided by law.

4. **SAME.** Where an inferior officer is vested with the exercise of discretion or judgment in the discharge of his duties, but in case his duties are clear, and there are not sufficient controverted facts to call for the exercise of discretion and judgment, or where such officer acts arbitrarily or fraudulently, a writ of mandamus may be issued to require the performance of his duty. **Held,** in this case, there being no allegation or facts showing that the defendant acted arbitrarily or fraudulently, it was error to issue the writ of mandamus and to make same permanent.

5. **MUNICIPAL CORPORATIONS — Recall — ''Voters' Register.''** The term ''voters' register,'' as used in article 8, section 1, of the charter of the city of Guthrie, has reference to and includes precinct books provided by section 3172, Rev. Laws 1910, to be furnished by the State Election Board to the county election board, wherein the inspectors of elections are required to transcribe the names of all electors registered in the precincts, to be arranged in alphabetical order, and the blanks to be filled to conform to the age, the street number, the post-office address, the politics, and the color of each elector, as stated in his registration certificate.

(Syllabus by the Court.)

*Error from District Court, Logan County;*
*A. H. Huston, Judge.*

Mandamus by H. F. Ardery against R. N. Dunham, city clerk of the city of Guthrie. Judgment for plaintiff, and defendant brings error. Reversed, with directions to dismiss.

*Burford & Burford* and *D. M. Tibbetts,* for plaintiff in error.

*Devereux & Hildreth,* for defendant in error.

RIDDLE, J.   The city of Guthrie adopted a charter and is operating under a charter form of government.   One J. E. Niesley was elected mayor of said city, and the plaintiff in error, R. N. Dunham, is the duly appointed and acting clerk.   In October, 1913, defendant in error, H. F. Ardery, and other citizens, residents of the city of Guthrie, filed their petition with the plaintiff in error, seeking to recall said J. E. Niesley, mayor.   Upon the filing of said petition, plaintiff in error, as city clerk, examined the same and compared it with the voters' register of said city, and gave it such other consideration as he deemed proper and lawful; and on the 30th day of October, 1913, said clerk certi-- fied in writing that he had carefully examined the petition and compared the names thereon with the voters' register to ascertain who would be entitled to vote at the election demanded by said parties for a successor to said J. E. Niesley; and as a result of said examination, he found that the same was insufficient, in that it failed to contain the names of the number of legal voters required by the city charter.   He also found that said petition on its face was insufficient.   Said petition was amended and an additional certificate made by said clerk, in substance as hereinbefore stated.   Thereupon defendant in error filed his petition in the district court of Logan county, praying for a writ of mandamus.   In substance, the petition alleges that in 1911 J. E. Niesley was duly elected mayor of the city of Guthrie; that defendant, R. N. Dunham, was duly appointed city clerk of said city; that plaintiff, with other qualified electors of the city, prepared and circulated a certain petition for the recall of said Niesley as mayor, which said petitions were signed by more than 800 qualified electors of the city of Guthrie, being more than 35 per cent. of the entire vote cast at the preceding election for all candidates for the office of mayor; that all the signers of said petitions were qualified electors, entitled to vote for a successor to the present incumbent; that each of the petitions set out the place of residence by street number of every signer; that the incumbent is incompetent to discharge the duties of said office; that he is not in harmony with the public welfare and the best interests of the city of Guthrie; and that he is

narrow in his views, and administers said office in a partisan manner, and not for the interests of the taxpayers of said city; that each of said petitions so filed with the clerk was properly and duly verified in the manner provided by the city charter; that said petitions for the recall of said mayor were filed with the city clerk on the 20th day of October, 1913, and within ten days thereafter the city clerk made in part the following certificate:

"The number of names appearing upon said petitions aggregate 805. Of said names, the number not appearing on the voters' register is 239; number of names withdrawn, 15; number of names as to which no street number is designated, 16; number of names as to which city of residence is not given, 3; number appearing in duplicate, 1; number not legible, 13; total, 287; total number of legal voters remaining, 518. The number of signatures required to authorize the submission of said petition to a vote is 573; by reason whereof, said petition contains less than the required number of duly qualified electors. I further certify that it has been reported to me that in some cases signatures were procured to said petition by misrepresentation of facts. I further certify that by reason of other defects and irregularities, apparent upon the face of the papers, said petition is insufficient, both in form and substance. I, therefore, certify and declare that said petition is not signed by the requisite number of qualified electors and is insufficient to authorize the calling of an election as demanded."

Plaintiff alleges that afterwards, within ten days from the date of said certificate to the original petitions filed with the clerk, as heretofore alleged, he caused said petitions to be amended by filing additional petitions containing the signatures of qualified electors who had not signed said petition, and by making an additional showing to the clerk that certain names stricken from the original petitions were duly qualified voters and should have been counted. It is alleged that it is the duty of the said R. N. Dunham, city clerk, to make a certificate to the effect that he has examined and compared the petitions with the voters' register, and that the petitions were signed by the requisite number of qualified electors, and that said petitions were regular in all respects; but plaintiff alleges that said defendant has wrongfully refused to so certify to the sufficiency

of said petitions and to submit the same to the board of com-
missioners without delay, in order that they may call an election
as provided for by said charter, and that he is without a remedy
in the premises, except by writ of mandamus, and prays the
court that he be awarded the writ, ordering said defendant to
certify to the board of commissioners of the city of Guthrie that
said petitions are sufficient.

Upon this petition an alternative writ of mandamus was
issued by the district court. Thereafter the defendant filed his
response to the alternative writ, which is, in substance, as fol-
lows: That said writ of mandamus does not state facts suffi-
cient to entitle plaintiff to the relief prayed ·for, or to any re-
lief, or to authorize a writ of mandamus to issue; (2) that plain-
tiff has no legal capacity to prosecute or maintain said proceed-
ing; (3) the alternative writ does not state facts sufficient to
constitute a cause of action; (4) there is a defect of parties plain-
tiff, as appears from the averments of said writ. He also denied
each and every material averment contained therein. He affirma-
tively averred that under the general law and the provisions of
the charter of the· city of Guthrie, he, as clerk of said city, was
vested with a discretionary power, and that he was required to
exercise his judgment in the determination of the question as to
whether or not said petition was sufficient and had been signed
by the required number of legal voters; that he had made such
examination in good faith in his official capacity as city clerk,
and certified to his findings·in said matter; that upon a careful
inquiry and examination of the proof, he came to the conclusion
and rendered his judgment to the effect that said petition was
insufficient, and he cannot be required to violate his oath and
conscience by executing a certificate contrary to his findings and
judgment, and he prays judgment that he be discharged with-
out costs. Several other matters are set up in his answer, but
all involve practically the same matter as contained in his certifi-
cate, denying the sufficiency of the petition filed.

Upon a hearing before the district court, where testimony
was introduced, pro and con, the court found that the plaintiff
in error had committed many errors in his finding and the

certificate made as a result thereof, and issued an order direct-
ing the city clerk to recount and add the names which were
stricken from said recall petition to the original number, and
that he certify the sufficiency of said recall petition to the com-
missioners forthwith. Other names which the clerk found were
not legal voters were ordered to be added to the petition. Mo-
tion for new trial was filed and overruled, and plaintiff in error
prosecutes his appeal to this court by filing petition in error,
with original case-made attached.

Plaintiff in error sets out twelve different assignments, which
he presents to this court, insisting that the judgment of the trial
court should be reversed. From the view we take of this case,
it will be necessary to consider only the following assignments
of error:

"(4) The court erred in rendering judgment against the
said R. N. Dunham for costs. (5) The court erred in ordering
the peremptory writ of mandamus to issue, as provided in said
judgment. (11) The court erred in overruling defendant's mo-
tion for a new trial."

If the cause had been before the district court on appeal
from the decision made by the city clerk, it would then require
consideration of other assignments of error, which might result
in the affirmance of the judgment of the trial court. The only
questions which we deem necessary to be considered are: First.
Is the provision of the charter involved here in conflict with any
provision of the Constitution? Second. Will a writ of manda-
mus be issued to compel plaintiff in error to do and perform those
things required of him by the trial court in the judgment ren-
dered?

The first question which naturally presents itself for our
consideration is: Is the provision of the charter involved here
in conflict with the provisions of the Constitution? The pro-
visions of the Constitution applicable are as follows:

"Any city containing a population of more than two thou-
sand inhabitants may frame a charter for its own government,
consistent with and subject to the Constitution and laws of this
state, * * * and if a majority of such qualified electors vot-
ing thereon shall ratify the same, it shall thereafter be submitted

to the Governor for his approval, and the Governor shall approve the same if it shall not be in conflict with the Constitution and laws of this state. Upon such approval it shall become the organic law of such city and supersede any existing charter and all amendments thereof and all ordinances inconsistent with it." (Section 3, art. 18, Const.)

It is contended that the charter is in conflict with sections 1, 2, and 6, article 8, of the Constitution, which provides:

"Section 1. The Governor and other elective state officers, including the Justices of the Supreme Court, shall be liable and subject to impeachment for willful neglect of duty, corruption in office, habitual drunkenness, incompetency, or any offense involving moral turpitude committed while in office.

"Sec. 2. All elective officers, not liable to impeachment, shall be subject to removal from office in such manner and for such causes as may be provided by law."

"Sec. 6. The Legislature shall pass such laws as are necessary for carrying into effect the provisions of this article."

It is contended, inasmuch as the officer sought to be removed was elected for a certain term, that he can only be removed in the manner provided for in the provisions of the Constitution quoted above. To so hold would be equivalent to holding that our Constitution was diametrically opposed to the charter form of government and the principle known as the recall. If it was not intended under the Constitution to give cities adopting the charter form of government the power and right to put in practice the power to recall their officers, then there would have been some express inhibition; and, in the absence of such, we are not warranted in holding that such power is by implication inhibited. If the municipalities operating under the charter form of government could only remove an official when guilty of an offense or some act which would warrant his impeachment or removal in the manner provided for in sections 533 and 540 of Rev. Laws 1910, it would not have been necessary for the people to incorporate in their charter any provision providing for the recall or removal of such officers, inasmuch as they could resort to the courts and remove any officer for such conduct as is covered by the sections referred to, *supra,* without any special provision in the charter. We under-

stand that the principle underlying the recall of public officers means that the people may have an effective and speedy remedy to remove an official who is not giving satisfaction—one who they do not want to continue in office, regardless of whether or not he is discharging his full duty to the best of his ability and as his conscience dictates. If the policies pursued do not meet the approval of a majority of the people, it is the underlying principle of the recall doctrine to permit them to expeditiously recall the official, without form or ceremony, except as provided for in the charter.

In *Bonner v. Belsterling* (Tex. Civ. App.) 137 S. W. 1154, the Supreme Court of Texas stated:

"It is contended that the recall provision of the charter seeks to substitute within the municipality a socialistic and communistic system of government in lieu of a republican form of government, and that it operates to impair the obligation of a contract. We do not concur in this contention. The charter does not impair the obligation of contract. The appellant held his office by election and not by contract. It is neither socialistic, communistic, nor obnoxious to a republican form of government to require an elective officer of a municipal government to submit to the voters of the city the issue for their determination whether he shall longer continue in office" (citing *Kadderly v. City of Portland*, 44 Ore. 118, 74 Pac. 710, 75 Pac. 222; *In re Pfahler*, 150 Cal. 71, 88 Pac. 270, 11 L. R. A. [N. S.] 1092, 11 Ann. Cas. 911; *Eckerson v. City of Des Moines*, 137 Iowa, 452, 115 N. W. 177).

In the case of *Conn v. City Council of the City of Richmond*, 17 Cal. App. 705, 121 Pac. 714, 719, the Supreme Court says:

"Manifestly the tenure of office and the method of removing an elected city official are purely municipal affairs, which in no sense conflict with the constitutional provision relating to the tenure of office or the removal by impeachment of state officers. Similar recall provisions as applied to administrative officers have been upheld and declared not to be in conflict with either state or federal Constitution in other jurisdictions, where the points of attack were identical with the arguments advanced here" (citing *Graham v. Roberts*, 200 Mass. 152, 85 N. E. 1009; *Hilzinger v. Gillman*, 56 Wash. 228, 105 Pac. 471, 21 Ann. Cas. 305; *Bonner v. Belsterling, supra*).

It is further contended that said charter is in conflict with section 2, article 25, of the Schedule to the Constitution, which provides:

"All laws in force in the territory of Oklahoma at the time of the admission of the state into the Union, which are not repugnant to this Constitution, and which are not locally inapplicable, shall be extended to and remain in force in the state of Oklahoma until they expire by their own limitation or are altered or repealed by law."

A proper and reasonable construction of this provision is that such local laws not of a general nature as apply to municipal corporations locally were intended to be and were superseded by the charter adopted, if in conflict therewith. We hold that the provision of the charter under consideration is not in conflict with any of the provisions of the Constitution, as contended.

The next question left for our determination is: Do the duties to be performed by the plaintiff in error, as clerk of the city of Guthrie, require the exercise of discretion and judgment? Are they in their nature quasi judicial? If the duties required of plaintiff in error are merely ministerial, not requiring the exercise of judgment or discretion, then a writ of mandamus is the proper remedy; and in this event, if it further appears that the court has committed no prejudicial error in the trial of said issue, the judgment should be affirmed. *Norris v. Cross,* 25 Okla. 287, 105 Pac. 1000. On the other hand, if the duties to be performed by plaintiff in error as city clerk, although he be a ministerial officer, require the exercise of discretion and judgment, the action of the trial court rendering the judgment complained of would be erroneous and should be reversed. *Monroe v. Beebe,* 10 Okla. 581, 64 Pac. 10; *Molacek v. White,* 31 Okla. 693, 122 Pac. 523. In the consideration of this question, we are not unmindful of the importance of a correct determination, not only as affects the parties of record and the people of the city of Guthrie in general, but it is likewise important as it may affect and have bearing upon the rights of the people to local self-government, when not inconsistent with

the Constitution and general laws, unrestrained and without an unreasonable interference on the part of the court or the other co-ordinate branches of the government. Besides the importance from the viewpoint suggested above, it is imperative that a proper, just, and sound conclusion be reached, lest we may overturn well-established principles and rules of procedure which have been tried and found necessary for the proper and orderly conduct in transacting the business of the courts, and likewise impair established rules based upon reason and justice, placing limitations upon the power of the courts as to unreasonable interference with other co-ordinate departments of government and their various inferior officers in performing discretionary duties in accordance with their consciences and in obedience to their oaths of office.

From the oral argument and the extensive and able briefs filed by counsel, we are impressed with the fact that there is but little difference of opinion as to the law of this case, but a wide difference as to its application to the facts involved. It will be necessary to analyze certain portions of section 1 of article 8 of the charter, in order to ascertain the character of duties to be performed by the city clerk. This section is the one under which the petitioners are seeking to remove the mayor in the manner set out in the statement of facts. In so far as necessary here, this section provides:

"The holder of any elective office may be removed at any time by the electors qualified to vote for a successor to such incumbent. The procedure to effect the removal of an incumbent of an elective office shall be as follows: A petition signed by electors entitled to vote for a successor to the incumbent sought to be removed, equal in number to at least thirty-five (35) per centum of the entire vote for all candidates for the office of mayor at the last preceding general municipal election, demanding an election of a successor to the person sought to be removed, shall be filed with the city clerk, which petition shall contain a general statement of the grounds and charges for which the removal is sought. The signatures to the petition need not all be appended to one paper, but each signer shall add to his signature his place of residence, giving the street and number. * * * Within ten days from the date of filing such petition,

the city clerk shall examine and from the voters' register, ascertain whether or not said petition is signed by the requisite number of qualified electors; and if necessary, the board of commissioners may allow him extra help for that purpose; and he shall attach to said petition his certificate, showing the result of said examination. If by the clerk's certificate the petition is shown to be insufficient, it may be amended within ten days from the date of said certificate. The clerk shall, within ten days after such amendment, make like examination of the amended petition, and if his certificate shall show the same to be insufficient, it shall be returned to the person filing the same, without prejudice, however, to the filing of a new petition to the same effect. If the petition shall be deemed to be sufficient, the clerk shall submit the same to the board of commissioners without delay."

In ascertaining the intent of the people in framing and adopting the charter under consideration, all provisions and each word and sentence of said section should be given effect. It will first be noted that an elective officer can only be removed by the "electors" qualified to vote for his successor. (2) Before a vote can be taken, a petition must be signed by electors entitled to vote for a successor to the incumbent sought to be removed, equal in number to 35 per centum of the entire vote cast for mayor at the preceding election. The framers of the charter and the people in their wisdom in adopting the same designated the city clerk as the official to determine the question as to when a petition filed is sufficient, and contains the requisite number of qualified electors. There was vested in him a quasi judicial power. It is the contention of the defendant in error, however, that the only duty the clerk is required to perform is simply to compare the petition with the voters' register, and if names equal to 35 per cent. of the total vote appended to the petition appear to be on the voters' register, his duties thereby cease, except to certify said fact to the board of commissioners; that it becomes the plain duty of the clerk, under the law, to so certify, and that he has no authority and is not required to ascertain from the face of the petitions and the voters' register whether or not such persons are legal voters, as defined by law. We are unable to agree with counsel in this contention.

It was the intention of the framers of the charter and the people in adopting same to make the voters' register the basis for the determination of the sufficiency of the petitions, yet it is our opinion that it was not intended, that the examination of the voters' register should be the only means by which he should determine whether or not the requisite number of legal voters had signed the petition. It was, no doubt, intended that the names signed to the petition should not be considered, unless they should be upon the voters' register; but from the other language in this section, when the clerk finds a name signed to the petition and finds the same name upon the voters' register, if it should appear from the face of the petition and the voters' register that such party was not a legal voter under the law, he is not compelled to consider and count him as such. If the contention of the defendant in error be sound, and the provision of the charter be given the construction contended for, then if the names signed to the petitions for removal are equal to 35 per cent. of the total number of votes cast for mayor at the preceding election, and if all of said names are found upon the voters' register, notwithstanding a large per cent. of the persons who signed the petitions and whose names appear upon the voters' register have become ineligible. to vote since registering, by reason of removal from the city or the precinct in which they registered, or for other reasons, which fact could be ascertained from the face of the petitions and the voters' register, thereby reducing the names of the legal voters below 35 per cent., yet the requirements of the charter in this regard would be fulfilled, and the clerk could exercise no discretion; it being his legal duty to certify said petitions to be sufficient. If this is a proper and reasonable construction to be placed upon the provision of the charter, then the following provision is surplusage and has no place, to wit: "Electors entitled to vote for a successor to the incumbent sought to be removed." It was only necessary to have provided that if the clerk, upon examination, found that the names signed to the petitions equaled in number at least 35 per cent. of the total vote cast for mayor at the preceding election, and same were upon the voters' register, he

should certify said petition as meeting all the requirements. In other words, upon examination by the clerk, if the persons whose names are signed to the petition for removal are found to equal in number 35 per cent. of the vote cast for mayor at the preceding election, and by comparison are found upon the voters' register, then it becomes his duty to make the certificate required, notwithstanding he may ascertain from the statement of the voters on the petition and the voters' register that among the names offered are those who are not legal voters for a successor to the incumbent, sufficient to reduce the number below 35 per cent. The clerk is not required to count names affixed to the petition, if he finds from an examination of the voters' register and the petition that such party is not a legal voter, entitled to vote for a successor to the incumbent. The charter further provides that "he [the clerk] shall attach to said petition his certificate, showing the result of said examination," not showing that the names attached to the petition are found upon the voters' register; that they are equal in number to 35 per cent. of the total vote cast for mayor, but that said certificate shall show the "result" of said examination. Again, said section provides:

"If by the clerk's certificate, the petition is shown to be insufficient, it may be amended within ten days from the date of said certificate."

This language clearly indicates that the clerk is vested with a discretionary and a quasi judicial power to determine whether the petition is sufficient. If the form of the petitions were proper, and if there were nothing lacking, other than sufficient names, the petition itself would not need amending, but permission should be given for leave to withdraw the same for the purpose of having other legal voters sign.

"After the amended petition is presented to the clerk, he shall, within ten days thereafter, make a like examination of the amended petition, and if his certificate shows the same to be insufficient, it shall be returned to the person filing the same, without prejudice, however, to the filing of a new petition to the same effect."

The law as expressed by this court—the law based upon reason and justice—the law as expressed by every court, will

not permit the use of the writ of mandamus to control an inferior officer in the performance of duties requiring the exercise of judgment or discretion, unless it appears that no facts are presented, calling for the exercise of judgment, except when it is alleged and shown that such officer acts arbitrarily or fraudulently.; in such case the writ may issue. *People v. Los Angeles,* 133 Cal. 338, 65 Pac. 749; *Bd. Com'rs v. State ex rel. Cobb,* 31 Okla. 196, 120 Pac. 913; *Norris v. Cross,* 25 Okla. 287, 105 Pac. 1000; *Montgomery v. State Elec. Bd.,* 27 Okla. 324, 111 Pac. 447; *McKee. v. Adair Elec. Bd.,* 36 Okla. 258, 128 Pac. 294; *Roberts et al. v. Marshall et al.,* 33 Okla. 716, 127 Pac. 703.

In the case of *Chesney v. Jones,* 31 Okla. 363, 126 Pac. 715, wherein a provision of a city charter was involved similar to the provision here, this court, speaking of the duty of the city clerk, said:

"Under paragraph B of section 10, he is required to determine whether the requisite number of qualified electors have signed the petition by certain specific means, to wit, by examining the petition, the registration books, and election returns. His jurisdiction and authority is special and limited, and herein is clearly, definitely fixed just the measure of his duty. The sufficiency of the petition filed with him shall be determined, first, by an examination of the petition, to determine necessarily whether it is in due form, apparently valid or forged, and to determine whether the requirements in reference to affidavits, etc., have been complied with. Next, the registration books will disclose to him whether the names appearing upon the petition are qualified electors as shown thereby. His rule for determining the qualifications of the electors to sign the petition is limited by the act to the names appearing upon the registration books. The election returns disclose to him the number of electors participating in the last preceding vote cast for the candidates, and enable him to ascertain whether the number signing the petition was equal in amount to 25 per cent. thereof. It is also to be noted that it is also provided that if the clerk's certificate shows the petition to be insufficient, the petitions may be amended, and that the determination of the sufficiency of the amendment is then made by the clerk under a like examination, which refers to the examination required to be made of the sufficiency of the petition in the first instance."

The case quoted from was a suit for a writ of mandamus to compel the clerk to certify the petition to be sufficient. He had made a certificate, showing the petition to be insufficient for want of the required names of qualified electors. The trial court awarded the writ. This court reversed the trial court and ordered the petition dismissed. The decision of this court was, no doubt, on the ground that the provision of the charter vested a quasi judicial power in the city clerk. So we hold the same rule applies here. The duties of the clerk in the instant case are clearly quasi judicial. The clerk is vested with power, in the first instance, to decide whether the petition in form is sufficient, and whether the grounds alleged come within the charter. (2) He must ascertain the total number of votes cast for mayor at the last preceding election. (3) From an examination of the petition, together with the voters' register, he must ascertain whether at least 35 per centum of the entire vote for all candidates for the office of mayor at the last preceding general election have signed the petition. (4) He must pass on the question whether the signatures are *bona fide,* or forgeries. The signers are required to give their street and number; the purpose of which is that the clerk may ascertain whether, by comparison with the voters' register, they are legally qualified electors. The facts having been ascertained, he is to determine whether or not the signers, or a sufficient number of them, are legal electors at the time. This legal question must be determined by looking to the law prescribing the qualifications of a voter. Thus, it will be seen, a purely legal question is presented, and under the charter the clerk is authorized to decide it. A similar question to the one here under consideration was before the Supreme Court of Iowa, in the case of *Bennett et al. v. Heatherington et al.,* 41 Iowa, 142, wherein it was said:

"The question next arising, upon the concession that the notice was insufficient, is what effect would such insufficiency have upon the order for the election made by the board. The action of the board of supervisors in determining whether the petition was 'signed by at least one-half of all the legal voters in the county,' and also whether 'the notice hereinbefore prescribed has been given,' was necessarily judicial. For such, and many other

purposes, the board of supervisors constitute a judicial tribunal having limited jurisdiction. The statute, in express language, gives to the board jurisdiction to determine those questions. Having jurisdiction to determine them, their decision is as conclusive as that of any other judicial tribunal, until it is reversed or set aside in some manner provided by statute. The board decided that the requisite number of voters had signed the petition, that the notice itself was sufficient, and that it had been given or published in the manner and length of time prescribed by the statute. As we have seen, the board of supervisors had jurisdiction, by express statute, to determine these questions, and if they did not decide them correctly, it was an error or irregularity only, which might have been corrected either by appeal, writ of error, or *certiorari*, whichever the statute may authorize, but which could not render their decision void. Their decision is binding and conclusive upon any other tribunal, when assailed collaterally, until it is reversed or set aside. If the notice was not given the number of days required by law, their decision was erroneous simply, and must be corrected as other errors are corrected (citing authorities)."

In the case of *Norris et al. v. Cross,* 25 Okla. 287, 105 Pac. 1000, it is said:

"It is not within the scope of a mandamus proceeding to coerce an executive officer in the discharge of a duty involving the exercise of judgment or discretion, or the exercise of judicial or quasi judicial power, further than to direct him to act. The court cannot supplant him in the determination of questions of fact or of law required by the statute to be determined by him, nor direct in whose favor his decisions shall be."

The authorities are so uniform upon this proposition that it has now become elementary. The provision of the charter in question conferred the authority and jurisdiction upon the city clerk to pass upon these questions. He may commit error, but his decision is not void, and not subject to be overthrown or disregarded in this proceeding. In the absence of fraud or an arbitrary action, his decision is conclusive on the courts. It is contended, however, since there was no provision for review, that a proceeding for writ of mandamus is the only remedy left to the complainant. As we have seen, this procedure cannot be substituted for an appeal, and can be resorted to only when a case is presented which comes within the exception. The petition in

this case does not bring the case within the exception, it does not allege that the clerk acted fraudulently, nor that his decision was made arbitrarily, and the fact that no provision is made for a review on appeal does not authorize the court to give relief by mandamus.

Again referring to the case of *Norris v. Cross, supra,* this court, in referring to the purpose of the writ of mandamus, said:

"It may not lawfully issue to review, reverse, or correct the erroneous decisions of an executive officer in such cases, even though there may be no other method of review or correction provided by law. *Decatur v. Paulding,* 14 Pet. 497, 599, appx., 10 L. Ed. 559, 609; *U. S. v. Black,* 128 U. S. 40, 9 Sup. Ct. 12, 32 L. Ed. 354; *U. S. v. Guthrie,* 17 How. 284, 15 L. Ed. 102; *Commissioners v. Whiteley,* 4 Wall. 522, 18 L. Ed. 335; *Georgia v. Stanton,* 6. Wall. 50, 18 L. Ed. 721; *Gaines v. Thompson,* 7 Wall. 347, 19 L. Ed. 62; *U. S. v. Windom,* 137 U. S. 636, 11 Sup. Ct. 197, 34 L. Ed. 811; *U. S. v. Blaine,* 139 U. S. 306, 11 Sup. Ct. 607, 35 L. Ed. 183; *U. S. v. Lamont,* 155 U. S. 303, 15 Sup. Ct. 97, 39 L. Ed. 160."

The next question presented is as to what constitutes the "voters' register," within the meaning of the provisions of the charter. We fail to find this term mentioned in the statute relative to elections or registration. It was said by this court in the case of *Chesney v. Jones, supra*:

"The ordinance under which the clerk is required to act was drawn with the purpose in view of making his duties as simple as they could be made. The evidence given by the registration books established a certain and ready foundation as a basis, and was doubtless deemed to be the best and the simplest which could be secured."

Keeping this rule in mind, what did the framers of the charter mean by the term "voters' register"? Section 3172, Rev. Laws 1910, provides:

"The State Election Board shall provide for each precinct books of sufficient size and properly ruled to indicate, in addition to the name of the registered voter, with the number of the registration certificate, his age, his street number, his post-office address, his politics and his color. And it shall be the duty of the county board to deliver to the inspector of elections one of

such books at the time the registration certificates are delivered, when the registration is completed, and it shall be the duty of the inspector of elections to transcribe into the said book, or cause to be transcribed into the same, the names of all electors registered in his precinct, and the same shall be arranged in alphabetical order, and the blanks after such names shall be filled by said inspector, to conform to the age, the street number, the post-office address, the politics and the color as stated in the duplicate certificate of registration. Such list of voters shall, in addition to said duplicate certificates, be delivered at the opening of the election into the hands of the precinct election board, and unless some member of the precinct election board requires an inspection of the carbon duplicate of the certificate of a voter, the fact that his name is recorded upon such book in its alphabetical order, and that it conforms to the original certificate presented by the elector, shall be considered sufficient evidence of such elector's right to vote."

The Legislature had in mind, in incorporating this provision into the election laws, the keeping of a more permanent record of the registration of voters than there would have been by keeping the carbon copies of the certificate referred to in this section. The same facts contained in the carbon copies of the certificates were required to be transcribed and kept in these books. They were more substantial, and would not be so easily lost or misplaced as the duplicates of the certificates; besides, the names were required to be kept in alphabetical order, that they would be more convenient. The blanks in these books were required to be filled out from the certificates by the sworn election officials, and they were to be used by the officials in conducting the election, for all purposes, save and except when one of the members of the board should call for the carbon certificate. The use of the duplicate certificate in this instance was, no doubt, for the purpose of making comparison when a mistake should be charged. In our opinion, the permanent books required to be filled out and kept by the election officials by this section of the statute were what the framers of this provision of the charter had in mind when they used the term "voters' register." We can see no good reason why all the papers, books, and certificates, and duplicates should have been included in this term, when so

to do would be to make the duty of the clerk more complicated, and the result uncertain, and without any apparent benefit to be derived therefrom. Thus we hold that the term "voters' register," as used in the charter, refers to and meant the precinct books, required to be kept by section 3172, Rev. Laws 1910, *supra*.

From the foregoing views, the judgment of the trial court is reversed, with direction to dismiss plaintiff's petition.

All the Justices concur.