## BOYLE v. ROCK ISLAND COAL MINING CO. et al.

No. 15964.   Opinion Filed Nov. 17, 1925.

Rehearing Denied June 14, 1927.

**1. Injunction—Mines and Minerals — Official Discretion of Chief Mine Inspector as to Regulations for Coal Mines.**

Under section 7554, C. S. 1921, the Chief Mine Inspector of the state has jurisdiction over coal mines to determine all questions of danger and injury to the mines in the operation of the mine, and to make such orders and prescribe such rules and enforce them as, in his opinion, are necessary to protect all persons from injury, and a court of equity will not interfere to control his judgment or his acts within the scope of his authority in the absence of fraud or arbitrariness.

**2. Same—"Arbitrariness" of Officer Justifying Injunction.**

Arbitrariness consists in conduct or acts based alone upon one's will, and not upon any course of reasoning and exercise of judgment. If the matter, thing, or practice calling for the exercise of authority is one involving a controversy about which reasonable and experienced men differ, the authority exercised on either side of the controversy could not be said to be arbitrary.

**3. Same—Injunctive Relief Improper.**

The record examined, and, held, the petition not sufficient to entitle plaintiffs to injunctive relief, and held, further, that the judgment is against the weight of the evidence.

(Syllabus by Threadgill, C.)

Commissioners' Opinion, Division No. 3.

Error from District Court, Oklahoma County; William Zwick, Judge.

Action by Rock Island Coal Mining Company and Rock Island Improvement Company, corporations, et al. against Ed Boyle, Chief Mine Inspector, for injunction. From an order granting a temporary injunction, defendant appeals. Reversed and remanded, with instructions.

E. C. Marianelli and Robert Burns, for plaintiff in error.

W. R. Bleakmore and John Barry, for defendants in error.

Opinion by THREADGILL, C. The action was commenced by the Rock Island Coal Mining Company and Rock Island Improvement Company, corporations, as plaintiffs, to restrain Ed Boyle, Chief Mine Inspector of the state, as defendant, from in any manner carrying into effect, or attempting to enforce, his order of May 17, 1924, to prevent the use of electric cap lamps in the mines of plaintiffs at Hartshorne, in Pittsburg county. The order was as follows:

"1. All miners, company men, and all other persons are hereby expressly forbidden to carry down and use in any mine in the state of Oklahoma any electric cap lamps for illuminating purposes, and this order supersedes all orders in conflict herewith

"2. This order shall be effective Monday morning, May 19, 1924, and is to remain in full force and effect during the pendency of an investigation to be conducted by the Mining Department of this state to determine the propriety and necessity of discontinuing the lamps heretofore generally used for illuminating purposes in the mines of this state, or whether they shall be substituted by some other lamp. This order shall remain in effect until further notice is duly given and posted, and in no event will any new lamps be permitted to be installed and used for illuminating purposes as a substitute for the lamps in general use for the past years, until proper rules and regulations are promulgated by the Chief Mine Inspector of the state of Oklahoma governing the proper and safe use of the same in the mines of this state.

"3. This order is not intended to suspend, nor is to be construed to interfere, with the operation of any mine in the state, and all mines are to continue mining operations and all coal companies and individuals operating mines in this state are directed to use, for illuminating purposes, carbide lamps such as have been used in this state, and to continue the use of the same until and, unless ordered changed and substituted as set out in paragraph 2.

"4. Any person, or persons, firms or cor-

poration, or any officer thereof, violating the provision hereof, will be prosecuted under the mining laws of the state of Oklahoma.

"(Signed)    Ed Boyle,
"Chief Mine Inspector,
"State of Oklahoma."

The plaintiffs contended that this order was arbitrary and capricious for the reason it was made in the face of the great weight of authority that the closed light was safer for illuminating purposes in coal mining where gas is found than open lamps. The defendant contended that the order was not unreasonable but was based upon inspection of conditions; that said inspection revealed to his mind that the electric cap lamps "were unnecessarily burdensome and did not give sufficient illumination to protect the lives of miners from the dangers of falls of rocks and coal; that said electric cap lamp had created a tendency and a practice among the plaintiffs to slacken up upon the requirements of the law on the subject of ventilation"; that the open cap lamp might be safe if used under proper conditions; that it was necessary to make further inspection and rules and regulations as to insulating electric wires and machinery before using said closed lamps; that the order was made pending the necessary inspection and rules before the installation and use of said closed lamps; that the open lamps burned up any small passing currents of gas that might be accumulated under the use of the closed lamps; that the open lamps, by burning the small gas currents, gave warning of gas dangers; that the closed lamps did not. Defendant further contended, and so stated in his answer, that from a long experience as a practical miner and as mine inspector of the state, and his knowledge of general conditions of the coal mines of the state and of the mines in controversy, in issuing the order complained of, he considered that the installation of the electric cap lamps in the mines named in the order constituted a "matter, thing and practice" in and connected with said mines to be dangerous, so as, "in his opinion", to threaten and tend to the bodily injury of the miners and persons working in said mines, and it was in pursuance of said findings that said order was made, and thereafter and within less than one month, to wit, June 14, 1924, he issued an order, statewide in its scope, setting forth the conditions under which any electric cap lamps may be used in any of the mines of the state, and a copy of said rules was attached to the answer. These rules were as follows:

"Enclosed Lamps.    Before closed lamps will be permitted to be installed by any operators in any mines in this state the following preliminary conditions must be complied with:

"1. All mining machines used for undercutting coal must be of the closed type approved by the U. S. Bureau of Mines.

"2. No open type motors may be used except in places ventilated by inlet air currents and all switches, circuit breakers, or fuses must be enclosed in explosion proof cases, or break under oil.

"3. No trolley wires will be permitted to run beyond inlet air currents and all electric wires must be removed from return airways.

"Upon compliance with the foregoing requirements, the closed lamps cannot be installed and used until approved by the Chief Mine Inspector, and, in event of their approval, until rules and regulations are promulgated governing the use of the same in each mine in this state."

Plaintiffs asked for a temporary restraining order, and the cause was heard by the court for this purpose on July 2, 1924. Affidavits and other evidence were submitted to the court on the issue as to whether or not the closed lights were safer than open lights, and at the close of the evidence the court overruled the demurrers filed by defendant to the petition of plaintiffs and the interplea filed by certain employes of the plaintiffs as interveners, and made an order in favor of plaintiffs for a temporary injunction against the defendant as Chief Mine Inspector of the state, and all persons acting by, through, and under him "from in any manner interfering with the use of electric cap lamps in the mines of these plaintiffs and from prosecuting any of the officers who are employes of the plaintiffs where any of them have and are violating any of the provisions of said order of May 17, 1924, until the further order of this court." The said injunction to be effective upon $1,000 bond being filed and approved, and from this order defendant has prosecuted this appeal.

It will be observed that the order appealed from was based upon the findings of the court that the "great weight of testimony" showed that plaintiffs had sustained the allegations of their petitions, "and that the action of the State Mine Inspector was arbitary and capricious, and therefore subject to injunctive relief."

We take it that the court meant by the words "arbitrary and capricious" that the order was without authority of law and unreasonable, and had only the self-assertion

of the defendant to support it, and the same grew out of a sudden impulse of the mind, whimical and freakish on the part of the defendant.

Defendant was Chief Mine Inspector of the state, and his duties and authority are fixed by law. The district mine inspectors are made subject to, and under the control of, the Chief Mine Inspector. Section 7553, Comp. St. 1921. The safe operation of the mine under chapter 63, is committed to the Chief Mine Inspector. Section 7554 of said statutes. In addition to the specific dangers and duties specified by chapter 63, section 7554 covers any other danger and duty by the following provisions:

"If the inspector find any matter, thing or practice in or connected with any such mine to be dangerous or defective so as, in his opinion, to threaten or tend to the bodily injury of any person, the inspector shall give notice in writing thereof to the owner, operator or lessee, and require the same to be remedied."

There is no matter, thing, or practice connected with the dangers threatening or tending to the bodily injury of the persons working in or about coal mines exempt from the jurisdiction of the Chief Mine Inspector for inspection, correction, and regulation. It is clear from these provisions of the statute that he is given quasi judicial authority to act and a wide margin of discretion in the scope of his authority. Section 7599, Comp. St. 1921, provides for the qualifications of mine inspectors as follows:

"No person shall be eligible to the office of Chief Mine Inspector, or to the office of Assistant Mine Inspector in the state of Oklahoma, unless he shall be at least 30 years of age, and shall have been a bona fide resident of this state for at least two years next before his election, and shall have had at least eight years' actual experience as a practical miner, and shall have passed the regular examination given by the State Mining Board of Oklahoma for mine superintendents and received from said board a certificate of competency as mine superintendent."

It is further provided in this section that neither the Chief Mine Inspector nor any of the assistants, while in office, shall be interested in any way, either directly or indirectly, in any coal mine, oil or gas, or other mining interest of whatever kind. By virtue of his office, therefore, the presumption must be indulged that the Chief Mine Inspector will exercise his authority and perform his duty according to law and any one complaining has the burden of proof to show to the contrary. We may take judicial knowledge of the fact that a coal mine worked under ground is a dark place with many crooks and turns as the coal is taken out of the slopes, entries and rooms, and persons employed therein must have artificial light to see their way. The evidence in this case shows that there are two sorts of artificial lights or lamps used in such mines. One the open light, the other the closed, both of which could be attached to the cap or head covering of the miner. The open light was generally an oil or carbide lamp with a wick, which when lighted made a small flame sufficient for all practical purposes. It may expose the miner to burns and explosions, where there are gas currents and deposits and the ventilation is defective; it might assist in ventilation in clearing the mine of light currents of gas by igniting the same and without injury to the miner, or it might warn him of the presence of inflammable, deadly gas known as "black damp," by diminishing the flame, that he would not otherwise have knowledge of until he has suffered great injury. This sort of light had been generally used in the mines of this territory and state for many years. The closed light is an incandescent electric lamp attached to the helmet and fed by a small battery fastened to the waist by a belt and connected to the lamp by a cord. The battery equipment weighs about six pounds. In use it slowly expends its force or energy, and the light correspondingly becomes less and this light is not as strong at any time as the open light, but it has been used in various parts of the country with satisfactory results. There is no danger of gas explosion from this lamp, but this advantage might tend to relax vigilance in the matter of ventilation, and the gas currents and deposits might accumulate and be exploded from some other cause, to the great danger and destruction of men and property, and the miners might be exposed to "black damp" without knowing of its presence. The light not being as strong as the open light lessens the ability to see the dangers from falling rock and coal and increases the hazard from these sources. The closed light was an innovation in this state. In installing the closed light in a mine that had been operated under the open light system, it was the duty of the mine inspector to see that the hazards were not increased thereby to the miners, and there were some rules necessary to be made and observed in the matter of insulating electric wires and machinery where this sort of machinery was used in the mine.

In the controversy before the court both

of these types of lamps had their advocates. Miners of long experience gave their testimony on both sides and expressed their reasons for the preference they had. Since these witnesses could not agree as to which was the safer light to be used, it occurs to us it was a matter within the jurisdiction of the Chief Mine Inspector, after careful inspection and consideration, and if the change was made from the use of the open light to the closed light, the same should be done under such rules as he saw fit to impose. The record discloses that the order of May 17, 1924, was made for the purpose of inspection, to determine whether or not the change could be made in safety to all concerned, and about a month thereafter, to wit, June 14, 1924, the defendant made an order authorizing the change to closed lights upon the conditions set out in the order as above stated. The record discloses a controversy between the plaintiffs and the miners over the use of these closed lights in the mines at Hartshorne. Plaintiffs had installed the closed lamps in their No. 12 mine, and had been using them for several months upon an order of the district mine inspector, Roberts, and were making preparations to install them in their Nos. 7 and 10 mines. The great majority of the miners were protesting against the change. The matter of the use of the closed lights had not been called to the attention of the defendant. The district mine inspector who made the order for the change in No. 12 mine did not report it to the Chief Mine Inspector in any of his monthly reports, nor does it appear from the record that this district inspector gives any testimony in the case, or any explanation for his failure to report the change to the defendant. The miners objected to the change and one of the local unions drew up a written protest stating certain increased dangers by the use of the closed lights. The contention reached the Chief Mine Inspector and he appeared upon the scene and was making an inspection of conditions to see if the change was safe and feasible, and the plaintiffs attempted to proceed with making the change and require the use of the closed lights in Nos. 7 and 10 mines without the approval of the defendant, and thereupon, the defendant made order of May 17, 1924, which was general and applied to all mines in the state, and, after a full inspection of the conditions and in less than a month's time the order of June 14, 1924, was made stating the rules under which the closed lights could be used. The plaintiffs applied to the United States District Court for injunctive relief against the order of defendant, and that court refusing to issue a temporary restraining order, plaintiffs dismissed the action and without alleging any other grounds than those pleaded in the federal court, they filed this action in the state court, and asked for the same relief as asked for in the federal court.

We have examined the entire record, and we do not see anything arbitrary or capricious in the acts of the defendant. He had a right by virtue of his office to interpose his counsel in the controversy, nor did he have to wait until he was invited. When he had knowledge of a radical change in the lighting system of the mines and a controversy as to the safety of nearly 1,000 men involved, and the great majority of these men objected to the change on the ground that it would increase the hazards incident to the work, it was the duty of the defendant to investigate conditions and make the necessary orders, rules, and regulations to prevent the change proposed or direct it. Otherwise, the authority vested in the Chief Mine Inspector to oversee and control dangerous conditions "in his opinion," as they appear to him, according to his best judgment, would be no authority; and the office created with power and authority to superintend in all mining matters regulated by statute and all dangerous conditions known to experience, would become one only of counsel and advice and unnecessary, as the miners could do this much for themselves. The authority exercised by the defendant could not be considered arbitrary because it is just such authority as is provided for by the statutes. The order made did not prevent the operation of the mines because they could use, as they had been using, and as the order directed to be used, the open lights for this purpose and continue the work. It did not prevent the plaintiffs from installing the closed lights on reasonable conditions, of which they do not complain. We cannot see where they have suffered any injury, nor can we see where they had any ground for complaint or cause of action. Counsel for defendant call our attention to some authorities that bear on the question involved. They cite High on Injunction (4th Ed.) section 1326, page 1338. The rule is stated as follows:

"Where the duties of a public officer are executive and the exercise of judgment and discretion, an injunction will not lie."

Also, Dunham v. Ardery, 43 Okla. 619, 143 Pac. 331, and the rule stated here is as follows:

"Where the duties devolving upon a mini-

sterial officer require the exercise of discretion and judgment, and such officer has acted, although erroneously, a writ of mandamus may not lawfully issue to review, reverse, or correct the erroneous decision of such officer, nor to control his decision, even though there may be no other method of review or correction provided by law."

It may be that these rules are not applicable in all cases, and that the rule in an action for mandamus is not applicable where injunctive relief is asked, and we have not quoted from the mandamus case except to show how far this court has gone in holding that equity will not interfere with the acts or judgments of other tribunals and executive officers in matters of their particular jurisdiction.

Counsel also call our attention to the case of Mutual Benefit Life Insurance Co. v. Welch, 71 Okla. 59, 175 Pac. 45, in support of the contention that a court of equity will refuse to enjoin the acts of a state officer in the exercise of his authority over a matter within his jurisdiction. This case involved the right of the Insurance Commissioner to approve or reject a certain form of life insurance policy. The Commissioner expressed the intention to reject the form submitted to him and the action was brought to enjoin the Commissioner from disapproving the form. The case went off on a demurrer to the petition. This court sustained the trial court and, in passing, held that the Commissioner had a large field for the exercise of judgment within the scope of his authority, and equity could not be invoked to control his judgment in such matters, and the decision held further that his action within the scope of his authority would not be disturbed by injunction merely because a court does not agree with him, unless such decision should be arbitrary or fraudulent. The court then explains what it means by "arbitrary" as follows:

"To be arbitrary, his decision must be based alone upon his will, and not upon any course of reasoning and exercise of judgment in determining whether the 'form' violates any law or principle of equity."

The demurrer was sustained on the ground that the petition did not state facts showing that the Commissioner will act arbitrarily or fraudulently. We think the principles announced in the case are applicable in the instant case, and it would be on "all fours" with it, if the trial court had sustained the demurrer interposed by defendant, and plaintiffs had appealed. The record shows that defendant did demur generally and specially to the petition in this case, and the court refused to act upon the demurrer until after the evidence was heard, and then overruled all demurrers.

We have read the petition, and we cannot see any facts stated showing that the acts complained of were arbitrary or fraudulent or capricious, and the demurrer should have been sustained on the ground that the petition did not state facts sufficient to constitute a cause of action. But since the case is here on the failure of proof to sustain the order for temporary injunction, still, the principle announced and the holding of the court in the above cited insurance case are applicable. The trial court can no more substitute its judgment for the judgment of the Chief Mine Inspector of the state in "a matter, thing or practice" involving 'danger to the miners, and restrain him from acting in the exercise of this authority, than it can substitute its judgment for that of the Insurance Commissioner in the matter of a legal form of insurance and protection of the public against unfair insurance contracts. We think the two cases are so similar that they must stand or fall together. Counsel for plaintiffs call our attention to the cases of Lagunitas Water Co. v. Marin County Water Co. (Cal.) 125 Pac. 351; Kendall v. Faulks (Cal.) 179 Pac. 886; and Okla. Ry. Co. v. Severns Paving Co:, 67 Okla. 206, 170 Pac. 216, to sustain their contention that the Supreme Court will not disturb the discretion of the trial court in granting a temporary restraining order pendente lite, but this rule cannot be applied where the discretion of one tribunal is interfering with the discretion of another tribunal in matter of its particular authority.

We do not think it necessary to discuss any other questions raised by the parties, or follow the authorities cited. The proposition seems to be a simple one that the Chief Mine Inspector, by virtue of his office and the authority given by law to him, has the right to determine all matters and controversies of dangers connected with the operation of coal mines and control them for the safety of the miners, or he has not, and if he has such authority, his judgment and acts are not subject to restraint by a court of equity, in the absence of abuse of his authority or fraud in its exercise.

We think the cause should be reversed with directions to vacate the temporary restraining order and take such further proceedings as are proper, not inconsistent with the views herein expressed.

By the Court: It is so ordered.

Note.—See under (1) 32 C. J. p. 242, §384; 27 Cyc. p. 747. (2) 4 C. J. pp. 1476, 1477; 32 C. J. p. 242, §384. (3) 4 C. J. p. 902, §2871; 32 C. J. p. 320, §530.