STATE of Oklahoma ex rel. John YAKU-BOSKY and Marie Hooks, Appellants,

v.

Don WILSON, County Assessor, of Oklahoma County, Oklahoma, Appellee.

No. 47011.

Supreme Court of Oklahoma.

Oct. 7, 1975.

James A. Ikard, Oklahoma City, for appellants.

Curtis P. Harris, Dist. Atty. and William L. Funk, Asst. Dist. Atty., Oklahoma City, for appellee.

DAVISON, Justice:

Although this court now affirms the Court of Appeals and reverses the trial court, we have granted Certiorari because of certain incorrect conclusions made by the Court of Appeals.

This is an action brought in the name of the State of Oklahoma by John Yakubosky and Marie Hooks, taxpayers in Oklahoma County, Appellants herein, against Don Wilson, County Assessor of Oklahoma County, Appellee herein, seeking a Writ of Mandamus requiring said Assessor to remove the "exempt" status on the tax rolls of St. Anthony Hospital, located in Oklahoma County. The Appellants alleged that they have been discriminated against "based on ability to pay by charitable, non-profit Hospitals located in Oklahoma County, Oklahoma", and that as taxpayers they have been deprived of the benefit of that revenue that would be generated if Appellee Assessor performed his statutory duty.

The Appellants allege that the hospital is not entitled to exempt status from ad valorem taxation because "it knowingly and willfully discriminated against persons seeking admission with regard to ability to pay by:

a. Requiring a 'preadmission deposit' of $150.00 to $500.00, varying with the type of medical treatment needed by the patient,

or coverage in that amount by a third-party intermediary or a combination of both.

b. Refusing to admit any individual who is unable to pay a cash preadmission deposit, or who does not have sufficient third-party intermediary coverage to meet the preadmission deposit requirements, or who does not possess a suitable occupation and income upon which the hospital may determine the applicant to be a good credit risk.

c. Discharging or transferring a patient for whom third-party intermediary coverage has lapsed and who is unable to meet the requirements outlined in sub-paragraph (b) above.

d. Refusing to discharge and threatening to refuse to discharge patients until they have made full payment of their accrued hospital bill."

The Appellants cite 68 O.S.1971, § 2405, which is, in part, as follows:

"The following property shall be exempt from taxation: . . . . (j) All property of any hospital established, organized and operated by any person, partnership, association, organization, trust, or corporation, as a non-profit and charitable hospital, provided the property and net income from such hospital are used directly, solely, and exclusively within this State for charitable purposes and that no part of such income shall inure to the benefit of any individual person, partner, shareholder, or stockholder, and provided further that such hospital facilities shall be open to the public without discrimination as to race, color or creed and regardless of ability to pay, and that such hospital is licensed and otherwise complies with the laws of this State relating to the licensing and regulation of hospitals."

An alternative Writ was issued by the trial court and Appellee answered that the property was not placed on the tax-rolls because of the fact that after investigation it was his opinion that the same was exempt from taxation. No evidence was taken and the trial court denied the relief sought by the plaintiffs, from which order this appeal was taken.

The trial court denied the Writ of Mandamus on two grounds: First, that the duty of Appellee Assessor involved his judgment and discretion and that mandamus may not lawfully issue to control him in the discharge of such duties; and second, that the plaintiffs have a plain and adequate remedy at law and therefore mandamus may not be issued.

Whether or not St. Anthony Hospital is exempt from ad valorem taxation depends on the purposes for which it is used and such is a question of fact. See *Tulsa County et al. v. St. John's Hospital* (1948), 200 Okl. 176, 191 P.2d 983. Consequently, since no evidence is before us, we are concerned only with problems relating to procedure for determining whether the property is taxable and not with the exemption itself.

In connection with mandamus actions, 12 O.S.1971, § 1452, states in part:

"This writ may not be issued where there is a plain and adequate remedy in the ordinary course of the law."

■ Our first question therefore is whether there is a plain and adequate remedy at law. We think there is not. The Appellee's position is that there is an adequate remedy for the plaintiffs in this case with the County Equalization Board, (68 O.S.1971, § 2459) [1] and/or with the County

---

1. "§ 2459. Sessions of county boards of equalization—Duty and authority of boards. —The county boards of equalization shall hold sessions . . . . for the purpose of equalizing, correcting and adjusting the assessment rolls in their respective counties of the State, to conform to the fair cash value of the property assessed, as defined by law . . . .

"It shall be the duty of said boards, and they shall have the authority,

(a) to equalize, correct and adjust the assessed valuation of real and personal property, by raising or lowering the valuation of the property, real or personal, or any taxpayer, to conform to the fair cash value thereof, as defined by law;

(b) to add omitted property; and

(c) to cancel assessments of property not taxable.

"It shall be the mandatory duty of each county board of Equalization to cooperate

Board of Tax-Roll Corrections (68 O.S. 1971, § 2479).[2] Pertinent parts of these statutes respecting the powers of these Boards are set out in the footnotes.

with and assist the county assessor in performing the duties imposed upon such assessor by Section 2436 of this Article, to the end that the records required by such section shall be fully and accurately prepared and maintained and shall harmonize with the assessed valuations of the real property of the county. . . . "

2. "§ 2479. Restrictions on correction or alteration—Correction of error by Board of Tax-roll Corrections—Credits and refunds.

. . . . .

"A board of Tax-roll Corrections, hereby created . . . is hereby authorized to hear and determine allegations of error, mistake or difference as to any item or items so contained in said Tax Rolls, in any instances hereinafter enumerated, on application of any person or persons whose interest may in any manner be affected thereby . . . .

"If, upon such hearing, it appears that:

(1) Any personal or real property has been assessed to any person, firm, or corporation not owning or claiming to own the same; or

(2) Property exempt from taxation has been assessed; or

(3) Exemption deductions allowed by law have not been taken into account; or

(4) The same property, whether real or personal, has been assessed more than once for the taxes of the same year; or

(5) Property, whether real or personal, has been assessed in the county for the taxes of a year to which the same was not subject; or

(6) The county board of equalization has, after delivery of the Tax Rolls, made a finding of fact under authority of law that, after January 1 of any year and before May 1 of the same year, improvements to real estate or other property assessed have been destroyed by fire, or that the value of land has been impaired, damaged or destroyed by floods or overflow of streams, and has made and entered an adjustment to assessments previously made and entered; or

(7) Lands or lots have in any manner been erroneously described; or

(8) Any valuation or valuations assessed and entered are at variance with the valuation finally equalized; or

(9) Any valuation or valuations returned for assessment and not increased by the county assessor have been entered on the assessment rolls for equalization at variance with the value returned, or in the event of increase by either the county assessor or the county board of equalization and no notice thereof was sent (offer of proof of failure to receive notice may not be heard); or

(10) Any valuation assessed and entered included, in whole or in part, as of the date of assessment under the law relating thereto, any property that had no taxable situs in the county, did not exist or had been erroneously placed; or

(11) Any property subject to taxation as of January 1 of any year, was thereafter acquired by conveyance of title (including tax title), by the county, or any city, town, or school district therein; or

(12) An error resulted from inclusion in the total of levies computed against the valuation entered, a tax levy or levies certified and final for none or part of which such property was liable in fact and the same be self-evident on recomputation, and involve no question of law; or

(13) As to personal tax, there be an error in the name of the person assessed, or, as to real property, the record owner at the time of assessment desires that his name be entered in lieu of whatever other name may have been entered as "owner" upon the roll; or

(14) There be any error in the tax extended against the valuation entered, whether by erroneous computation or otherwise; or

(15) There be any error in transcribing from the county assessor's permanent survey record to the assessment rolls either as to area or value of lands or lots or as to improvements thereon; or

(16) The county treasurer has, of his own volition, restored to the tax rolls any tax or assessment where the entry upon the tax rolls shows the same theretofore to have been stricken or reduced by certificate issued by constituted authority, except where restored by specific court order or in conformity to general decree of the Supreme Court of Oklahoma invalidating in mass all such certificates of a class certain, and except if the owner of such property demand its restoration and make payment in which instance the county treasurer shall require that he sign on the face of his receipt a statement that he 'Paid voluntarily without demand, request, or duress'; or

(17) Any personal property assessment and personal tax charge shall have been entered upon the assessment and tax rolls except upon proper return of assessment by the taxpayer or increase thereof with due notice, or as a delinquent assessment made by the County Assessor or his deputies in detail either on view or reliable information; then, in either or any such event, it shall be the duty of the Board of Tax-roll Corrections to make and the Secretary to enter its findings of fact and to correct such error . . . ."

The Board of Equalization's function is limited to equalizing, adjusting and correcting mistakes in assessments made either by increasing or lowering them; adding omitted property or cancelling assessments on property not taxable. We see nothing in the statute which would afford relief where taxable property is found exempt by the Assessor.

The Appellee urges that the Board of Tax-Roll Correction's powers with respect to "(2) Property exempt from tax has been assessed" and (7) Lands or lots have in any manner been erroneously described", are a sufficient remedy to forbid the use of mandamus. These provisions do not cover the situation in this appeal. The Appellee urges that the powers to hear cases where the property has been assessed implies the right to hear cases where the property has been found exempt. The statute spells out seventeen instances where this Board may act. The present problem could have been easily covered by the Act but it was not.

The Appellee cites *Baldwin v. Board of Tax-Roll Corrections* (Okl.1958), 331 P.2d 412, as authority for implying some additional power in the Board. That case involved property assessed for taxation where it was claimed by the owner that a part thereof was leased to the Federal Government and therefore exempt. We held the Board had such authority even though it might incidentally thereto have "to evaluate the exempt portion in order to effectuate the purposes of the statute." Here we were implying authority to do that which is necessary to accomplish the thing that was authorized. We do not think that implying power to do that which is necessary to accomplish a purpose specifically authorized would suggest in any way a power to do something that was not authorized.

We see no power in either the Board of Equalization or the Board of Tax-Roll Corrections to order an assessment of property which the Assessor has determined to be exempt, and, consequently, see no adequate remedy at law which would prevent mandamus in this case.

■ The trial court held that, aside from the question of whether there is an adequate remedy at law, mandamus will not issue because the duty of the Assessor involved "the exercise of his judgment and discretion in the construction of the law and in determining the existence and effect of the facts." 68 O.S.1971, § 2435, provides, in part, as follows:

"(b) The county assessor shall assess and value all property, both real and personal, which is subject to assessment by him, and shall place a separate value on the land and improvements in assessing real estate; and he shall do all things necessary, including the viewing and inspecting of property, to enable him to assess and value all taxable property, determine the accuracy of assessment lists filed with him, discover and assess omitted property, and determine the taxable status of any property which is claimed to be exempt from ad valorem taxation for any reason."

Numerous cases are cited by both parties dealing with the general rules involving mandamus in case of discretionary acts as against ministerial acts. The Appellee cites authority for the proposition that mandamus will not lie to force discretionary acts but only those ministerial in character (See *Board of Education v. Short* (1923), 89 Okl. 2, 213 P. 857). The Appellant cites authority for the proposition that mandamus will lie even where the act complained of called for exercise of discretion where such officer acts arbitrarily (See *Dunham v. Ardery* (1914), 43 Okl. 619, 143 P. 331). Appellants cite *Bankers Union Life Insurance Co. v. Read* (1938), 182 Okl. 103, 77 P.2d 26. In that case the court states a general rule as follows:

"It is well settled that mandamus will not lie to compel the performance of a power, the exercise of which lies in the discretion of the officer against whom the writ is sought, unless the action of the officer is capricious, arbitrary, or unreasonable."

**848**

Here no evidence has been taken and how these rules apply cannot be determined. The only question that can be examined by us at this time involves the pleadings.

While our conclusion in reversing the trial court corresponds with the decision of the Court of Appeals, we have granted certiorari because of statements made in that opinion which we believe to be unsound.

The Court of Appeals' opinion concluded with this statement:

" * * * This conclusion rests on the premises that if the hospital has refused to admit one or more members of the public because of failure to make a cash 'preadmission deposit' of at least $150, or show evidence of adequate insurance, or have a suitable occupation and income indicating the prospective patient to be a good credit risk, then the hospital facilities are not 'open to the public . . . regardless of ability to pay' as a result of which no tax exemption is authorized by the provisions of 68 O.S.1971 § 2405(j) and defendant has a mandatory duty to assess the hospital property for ad valorem taxes.

"The case is therefore reversed and remanded with directions to grant relators a new trial and proceed with a hearing on the merits and compel the defending assessor by writ of mandamus to assess St. Anthony Hospital for ad valorem taxes for every year it is shown not to have been entitled to an exemption."

There is nothing in the petition which suggests any reason for assessing this property for prior years. The statute sets out grounds for assessments for prior years and no issue thereon has been raised or briefed in this case. We see no basis for such directions to the trial court. At any rate, the property involved here is not in any sense omitted or overlooked property. Here the property was considered by the assessor and he determined it to be exempt. The issue involves the exemption made.

In dealing with the over all problem presented, consideration must be given to the opinion of this court in *Tulsa County v. St. John's Hospital,* supra, wherein we held a non-profit hospital to be exempt and stated: "Under Sec. 6, Art. X of the Constitution of Oklahoma, all property used exclusively for religious and charitable purposes is exempt from taxation." This exemption cannot be withdrawn by the legislature and we quoted a statement from an earlier opinion as follows: "The fact that it charges and receives pay for patients able to pay does not detract from the charitable nature of the service rendered."

The decision of the trial court dismissing this action is reversed and this case is remanded to the District Court for hearing.

All Justices concur.